James T. PRUITT d/b/a Seward Ship's Ace Hardware and Marine, Appellant,

v.

CITY OF SEWARD, an Alaskan municipal corporation, Appellee.

No. S–11628.

Supreme Court of Alaska.

Jan. 26, 2007.

---

Ronald L. Baird, Office of Ronald L. Baird, Anchorage, for Appellant.

Cheryl A. Brooking, Wohlforth, Johnson, Brecht, Cartledge & Brooking, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

James Pruitt applied to the City of Seward for a permit to erect a new building in the city's industrial zone. Pruitt's building plan included a canopy over the building's front entrance. The city refused to grant permission to build the canopy, claiming that the canopy was an "attachment to a building" that would extend into the building setback mandated by Seward's zoning code. Pruitt did not appeal. After Pruitt erected his building, including the canopy, the city filed a superior court enforcement action and argued that Pruitt could not defend in that action because he had not exhausted his administrative remedies. The superior court used its independent judgment to interpret the city's zoning codes, held that Pruitt was in violation of the zoning codes, and ordered him to remove the canopy. We hold that, because the city did not provide him with notice that its interpretation of the city zoning code was a final action, the exhaustion doctrine does not foreclose Pruitt from defending the city's enforcement action. We also hold that, because the city effectively denied Pruitt an opportunity to appeal its zoning decision and because the zoning code is ambiguous, the superior court should have given him an opportunity to submit the issue of the code's meaning to the city's planning and zoning commission. We therefore remand with instructions to hold the enforce-

ment action in abeyance so Pruitt can appeal the city's interpretation of the zoning code.

## II. FACTS AND PROCEEDINGS

### A. Facts

James Pruitt applied to the City of Seward for a building permit in August 2000. Pruitt proposed erecting a pre-fabricated building in Seward's industrial zone. The building plan included a canopy over the front entrance of the building. The Seward City Code's (SCC) zoning provisions require that all "structures" in industrial zones be set back at least twenty feet from the street.[1] Seward City Code § 15.10.140 defines "setback" as:

> The required minimum distance from right-of-way or lot line that establishes the area within which only fencing, landscaping, driveways, parking and similar uses are permitted. Any structure including, but not limited to, decks, stairways, porches or other attachments to a building are specifically prohibited in the setback. Building eaves are permitted to extend into the setback a maximum of two feet.

Seward City Code § 15.10.140 defines "structure" as:

> Anything constructed or erected on the ground or attached to something having location on the ground, including, but not limited to, buildings, towers, and sheds. Fences, retaining walls less than three feet in height, signs, and similar improvements of a minor character are excluded.

Linda–Rae Olsen, the city clerk, sent Pruitt a letter on August 18, 2000. It cited SCC § 15.10.140, and stated that from the building plans it appeared that the "roof [eave], the [fascia] panel, and the canopy over the store entrance" would extend into the setback. The letter indicated that Pruitt's site plan could not be approved unless he verified that:

> 1. The building [eaves] do not extend over two feet into the 20 foot front yard setback[;]
>
> 2. the store front canopy does not extend into the 20 foot front yard setback and;

> 3. the [fascia] panel does not extend into the 20 foot front yard or 10 foot side yard setbacks.

At Pruitt's request, Olsen later faxed him information on applying for a variance from the zoning code.

Pruitt's building permit was issued in October 2000. It contained the following statement in bold print: "The Canopy is not part of this permit [and] has not been approved."

The city engineer conducted inspections during construction and verbally notified Pruitt and his contractor during those inspections that the canopy extended into the setback. Dave Calvert, the city's building official, performed the final inspection. He told Pruitt that the canopy was in the setback and that he would not issue a certificate of occupancy until that problem was corrected.

Rachel James, Seward's city planner, sent Pruitt a letter in March 2001 notifying him that his canopy was "in violation of City Code § 15.10.140 pertaining to setbacks." The letter instructed Pruitt to remove the canopy from his building or provide an "as-built survey" showing that the canopy was not located in the setback. James also informed Pruitt that the planning and zoning commission ("commission") had put the topic of setbacks on its March 6, 2001 agenda.

Pruitt then filed a variance application requesting authorization to allow "a one to three foot doorway overhang (canopy) into the twenty foot front yard setback." A public hearing on the variance application was held in April 2001 and the commission denied the application. Pruitt did not appeal this denial.

Calvert sent Pruitt a letter in October 2001 notifying Pruitt that it was a violation of the Uniform Building Code to use or occupy the building without a certificate of occupancy. Calvert again emphasized that he would not issue a certificate of occupancy until the building complied with the city's zoning requirements. The letter also stated: "As always, you can appeal this decision to the City Council if you so desire."

---

**1.** *See* SCC § 15.10.220; SCC § 15.10.140.

Pruitt occupied the property and opened the building for business without a certificate of occupancy. In March 2002 Pruitt talked to Calvert about building a loading dock on the back of his store and applied for a building permit. Calvert told Pruitt that he would not issue any additional permits until Pruitt had corrected the "canopy setback problem" and obtained a certificate of occupancy for the building.

As James had suggested in March 2001, Pruitt obtained an as-built survey in September 2002 showing that his canopy extended into the setback by two feet. Pruitt then built a covered loading dock without a permit. Calvert sent Pruitt a letter in May 2003 stating that by building the loading dock, Pruitt violated the building code because he did not submit plans for review or submit to inspections during the building process. Calvert reminded Pruitt that the canopy was still in the setback and that Pruitt did not have a certificate of occupancy for the building. Calvert also notified Pruitt that he could be fined up to $1,000 per day for the violations.

In a July 2003 letter Calvert threatened legal action and warned Pruitt that steps would be taken to fine him up to $1,000 per day if he did not correct his violations of the building code. Calvert instructed Pruitt to reduce his canopy width and to obtain a building permit, a plan review, and inspections for the loading dock. Calvert advised Pruitt that the city would close the threatened legal action if Pruitt complied.

During fall 2003 the commission addressed the setback requirement in the industrial zone at multiple commission meetings. In December 2003 the commission recommended reducing industrial setbacks to ten feet. Nothing in the record indicates whether the city council adopted the commission's recommendation and changed the city code.

**2.** Seward City Code § 15.10.410 states in pertinent part:
 (b) *Appeals—standing.* Any person or persons aggrieved by an action or determination taken under this chapter may appeal said action or determination.

## B. Proceedings Below

The City of Seward filed a superior court enforcement action against Pruitt in November 2003. The city's complaint alleged that Pruitt: (1) violated SCC § 12.05.010 by using and occupying the building without a certificate of occupancy; (2) intentionally violated the building code by constructing the canopy in violation of the building permit; (3) violated the city's zoning code by constructing a canopy that extended into the required twenty foot setback; and (4) intentionally violated the building code by constructing a loading dock without a permit. The city asked the court to impose a fine of $1,000 per violation per day plus punitive damages, to require removal of the loading dock, and to enjoin Pruitt from using the building without a certificate of occupancy.

Pruitt counterclaimed, asserting that the city's treatment of the canopy as a violation of SCC § 15.10.140 violated his federal and state rights to due process and equal protection. Pruitt requested either an injunction prohibiting the city from classifying canopies such as Pruitt's as violations of SCC § 15.10.140 or a decree declaring that section .140 "does not prohibit the canopy on Pruitt's building or, if it does, that said ordinance is unconstitutional and may not be enforced against Pruitt."

The parties cross-moved for summary judgment and the superior court heard oral argument. The city claimed that Pruitt had waived his right to raise any objections or to make any claims against the city because he did not exhaust his administrative remedies under the zoning and building codes. The city noted that Pruitt had not appealed the commission's denial of his variance application. It also alleged that Pruitt should have administratively appealed the city's interpretation of SCC § 15.10.140 per SCC § 15.10.410.[2]

 (c) *Time limitation.* An appeal of a decision of the administrative official or the Seward planning and zoning commission must be filed within ten days of the action or determination being appealed.... Any decision not appealed within these time limits shall become final.

The superior court held that resolution of the exhaustion issue was not necessary because:

> Even if no deference is given to the Building Inspector's decision, the court reaches the conclusion that the canopy is an impermissible encroachment because the plain language of SCC 15.10.140 prevents an "attachment" to a "structure" to extend into the setback as far as the subject canopy. See: SCC 15.10.140. There is no question that the canopy is an attachment to a structure.

The superior court refused to allow Pruitt to challenge the causes of action arising out of the city's building code because it found that Pruitt was aware of "the right to appeal violations of the building code" and had failed to do so. The court also held that Pruitt's constitutional arguments were "without merit." As a sanction, the court gave Pruitt the option of either bringing his building into compliance with the zoning and building codes within sixty days or paying a fine of $10.00 per violation per day for the approximately four years since the initial violation. The court also declared the city the prevailing party and awarded it attorney's fees.

Pruitt appeals.

## III. DISCUSSION

### A. Pruitt Is Not Barred from Raising a Defense to the Enforcement Action.

■ The city argues that Pruitt cannot raise any objection or defense to its enforcement action because he failed to exhaust his administrative remedies. It claims that Pruitt was required to appeal the city's interpretation of the zoning code under the procedure set out in SCC § 15.10.410. That section allows a person aggrieved by any action or determination under chapter 15.10 of the city code to appeal that action or determination to the city's planning and zoning commission within ten days. It also specifies that any action not appealed within the prescribed time limit is final.[3]

The city also argues that Pruitt should have appealed the city's building code decisions through the administrative appeal process set out in SCC § 12.05.045. That section allows an appeal to the city council by any person aggrieved by an administrative officer's interpretation and enforcement of the codes of technical regulation adopted under chapter 12.05 of the city code. Pruitt's failure to appeal the city's decisions regarding the *building* code, however, does not help analyze whether Pruitt had an obligation to appeal the *zoning* code ruling. Because we believe the case turns on Pruitt's obligation to appeal the zoning code ruling, the city's argument that Pruitt failed to exhaust under SCC § 12.05.045 is irrelevant. As we explain below, the city's zoning code determination underlies all of its building code determinations. Thus, it does not matter whether Pruitt should have appealed the building code ruling under SCC § 12.05.045.

The city also argues that Pruitt should have appealed the planning and zoning commission's decision denying the variance. But as we explain below in Part III.C, it would have been inconsistent for Pruitt, while seeking a variance, to argue that his canopy did not in fact violate the zoning code. The variance process gave Pruitt an opportunity to argue that the city should make an exception to its conclusion that a canopy is an "attachment to a building" under SCC § 15.10.140; it did not give him an opportunity to argue that the city was misinterpreting its zoning code. We therefore conclude that Pruitt did not need to appeal the variance denial to exhaust his administrative remedies regarding the city's interpretation of the zoning code.

■ We review de novo the legal question whether a party exhausted its available administrative remedies.[4] Pruitt had standing to appeal to the planning and zoning commission the city's determination that his canopy was an "attachment to a building" within the meaning of SCC § 15.10.140, because that determination prevented Pruitt from lawfully constructing the building as he had pro-

---

**3.** SCC § 15.10.410(c).

**4.** *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n,* 99 P.3d 553, 558 (Alaska 2004).

posed.[5] The city has not alleged exactly which determination Pruitt should have appealed or when its interpretation of SCC § 15.10.140 became final. We assume that the city contends that Pruitt should have appealed to the commission after he received Olsen's letter informing him that his canopy was an "attachment to a building" that could not extend into the setback. There is no dispute that Pruitt did not appeal from that letter or any later letter arguably deciding that the canopy violated the zoning code.

Pruitt argues that compliance with the city's appellate procedure should be excused "where the appellant doesn't get a notice indicating a final decision has been made and that a stated appeal time has begun to run." He refers by analogy to Appellate Rule 602(a)(2), which states that the appellate period "does not begin to run until the agency has issued a decision that clearly states that it is a final decision and that the claimant has thirty days to appeal." Pruitt contends that the time for appealing the city's interpretation of SCC § 15.10.140 has not yet begun to run because the city never told him that its decision was final, nor did it instruct him that he could appeal under SCC § 15.10.410.

■ We have interpreted Appellate Rule 602(a)(2) strictly, requiring that to begin the running of the thirty-day appellate period, the agency's decision must explicitly state that it is a final decision.[6] Although Appellate Rule 602 does not govern internal administrative agency appeals of the sort present here, it is analogous. The doctrine of fairness requires that an individual must be notified that the agency's decision is final and appealable, if the doctrine of exhaustion is to bar a claim in a later proceeding.[7]

■ Moreover, if the recipient is not told explicitly that a determination is final, it can be difficult to determine whether an informal agency action is final and therefore appealable.[8] Informal agency decisions, such as those announced in letters, interpretive rules, and policy statements, often cannot be characterized as "final actions" because the decision either does not come from someone with ultimate decision-making authority or because the decision is hedged with language suggesting that the position taken is tentative.[9] One commentator has noted that when an agency's determination is expressed informally, courts will determine the "finality" of the informal expression based on what is most equitable in that case.[10] Courts will often allow appeals filed after the expiration of the appellate period if the party receiving the informal advice does not realize that such advice was meant to be determinative.[11] We agree that a party should not be barred from raising an argument in a later proceeding for failure to exhaust its administrative remedies if it is unclear whether the agency's informal opinion was a final and appealable action.

As noted above, we assume that the city contends that Pruitt should have appealed to the commission after he received Olsen's letter informing him that his canopy was an

---

**5.** See SCC § 15.10.410(b).

**6.** See *Carlson v. Renkes*, 113 P.3d 638, 642 (Alaska 2005) (holding thirty-day appellate period had not begun because letter issuing opinion did not indicate that opinion was final or inform of appellate procedure); *Manning v. Alaska R.R. Corp.*, 853 P.2d 1120, 1124 (Alaska 1993) (holding agency must "clearly indicate" that its opinion is final order and that aggrieved party has thirty days to appeal under Appellate Rule 602); *Skudrzyk v. Reynolds*, 856 P.2d 462, 463 (Alaska 1993) (holding that Appellate Rule 602 did not bar late-filed administrative appeal because letter from university president did not indicate that it was final decision).

**7.** Cf. *Owsichek v. State, Guide Licensing & Control Bd.*, 627 P.2d 616, 622 (Alaska 1981) (holding that doctrines of surprise and excusable neglect allowed guide to administratively appeal board's determination after appellate period had passed because board had not notified him that its decision was final and appealable). Cf. *Song v. Song*, 972 P.2d 589, 594 (Alaska 1999) (holding that fairness required trial court to both notify litigants that it was converting their stipulated marital dissolution proceeding into divorce proceeding and provide evidentiary hearing on disputed property issues).

**8.** 2 Richard J. Pierce, Administrative Law Treatise § 15.11 (4th ed.2002).

**9.** 2 Pierce, *supra* note 10, at § 15.15.

**10.** 2 Frank E. Cooper, State Administrative Law 592–93 (1965).

**11.** 2 Cooper, *supra* note 12, at 592–93; *see also Owsichek*, 627 P.2d at 622.

"attachment to a building" that could not extend into the setback. Olsen's letter stated: "This office has reviewed your plans for a new building ... it also appears on the building plans that the ... canopy over the store entrance will extend into the setback." The letter then quoted SCC § 15.10.140, stated that *"other attachments* to a building are specifically prohibited in the setback," and instructed Pruitt to verify that his canopy would not extend into the setback. (Emphasis in original.) The letter did not specify what "this office" refers to but is written on City of Seward letterhead. The letter was signed:

Sincerely,
The City of Seward
Linda–Rae Olsen
City Clerk

Olsen's letter did not inform Pruitt that the city's interpretation of the zoning code was final and appealable. Moreover, the city's zoning code does not specify which office or administrator bears ultimate responsibility for interpreting the code.[12] Pruitt therefore had no way to know whether the interpretation expressed in Olsen's letter was the city's final decision or whether he could attempt to persuade a superior that the letter's interpretation of the code was erroneous.

There is also evidence in the record suggesting that the commission was in the process of changing the zoning code during Pruitt's canopy dispute. James's letter to Pruitt stated: "At your request, we have put the topic of setbacks on the Planning and Zoning Commission agenda for their regular meeting on March 6, 2001." In an affidavit, Pruitt said that he discussed the canopy situation with then-City Manager Scott Janke, who told Pruitt that he hoped the setback requirement in industrial zones would be reduced. Pruitt's canopy would have complied

with the city's zoning code had the setback requirement been reduced by only two feet. In a later affidavit, Pruitt stated that he learned that the commission had discussed altering the setback requirements at meetings in late 2003.[13] This proposed change in the zoning code further indicates that the city's interpretation of the zoning code was not "final." Thus, because the city did not indicate in the Olsen letter that it was making a final decision and because the city suggested to Pruitt that it might change the zoning code in a way favorable to him, the city did not put Pruitt on notice that, by not appealing the city's determination that his canopy was a structure under SCC § 15.10.140, he would later be precluded from defending an enforcement action if the city brought one.

Appellate Rule 602(a)(2) also requires agencies to inform parties of their right to appeal to the superior court within thirty days. Neither the city's letters notifying Pruitt that his canopy violated SCC § 15.10.140 nor the building permit prohibiting the canopy advised Pruitt that he could appeal those decisions. The city also did not inform Pruitt of the appellate process outlined in SCC § 15.10.410.

The city first referred to SCC § 15.10.410 in its summary judgment motion in the superior court enforcement action. The only city communication to Pruitt mentioning a right to appeal was the letter from Dave Calvert that stated: "As always, you can appeal this decision to the City Council if you so desire." But the subject of Calvert's letter was not SCC § 15.10.140; instead, Calvert's letter informed Pruitt that he was in violation of the building code, not the zoning code. It is the zoning code that contains the setback requirement.[14] Thus Pruitt was not informed

---

**12.** *See* SCC § 15.10.110–.430.

**13.** Pruitt's affidavit appears to interchange the years 2003 and 2004. For example, it states that the commission discussed altering the setback requirement at meetings on "October 8, November 5, and December 2, 2004." But then it states that a proposed amendment changing the setback requirement was presented at the December 2, 2003 meeting. Because he executed his

affidavit on July 7, 2004, we assume that Pruitt erroneously attributed the commission's meetings to 2004 when in fact they occurred in 2003.

**14.** SCC § 15.10.140 (defining "setback" as used in the zoning code); SCC § 15.10.220 (outlining setback requirements in each zoning district and describing purpose of setback requirement).

of his right to appeal the city's interpretation of the zoning code before the city commenced the enforcement action.

The city argues that *Ben Lomond, Inc. v. Municipality of Anchorage*[15] forbids Pruitt from defending the enforcement action because Pruitt did not exhaust his administrative remedies. In that case, a municipal zoning official revoked building permits previously issued to Ben Lomond for construction of an apartment complex.[16] The zoning official then explained to Ben Lomond that it had the right to administratively appeal the denial of its building plan.[17] Ben Lomond chose not to appeal but later brought a separate superior court action for deprivation of property without due process.[18] We held that Ben Lomond was barred from bringing its claim because it had failed to exhaust its administrative remedies when it chose not to appeal the zoning official's decision.[19]

*Ben Lomond* is distinguishable in two significant ways. First, the municipal zoning official, after denying the proposed site plan, explained to Ben Lomond that the decision could be appealed.[20] Here there is no suggestion that the city ever told Pruitt, even informally, of the applicable appellate process or that it notified him that a final decision had been made. Second, Ben Lomond initiated an independent action in superior court alleging that the municipal official's zoning decision violated its constitutional rights.[21] Here, the city brought the enforcement action; Pruitt is merely attempting to defend that action.

Because the city did not inform Pruitt that its decision was final, the exhaustion doctrine does not bar Pruitt from defending against the city's enforcement action.

## B. Pruitt Is Not Collaterally Estopped from Challenging the City's Interpretation of SCC § 15.10.140.

The planning and zoning commission's denial of Pruitt's variance application ruled that "canopies or marques which extend out from a building are attachments to a building and clearly prohibited in the setback." The city contends that because Pruitt did not appeal the denial of his variance application, he is foreclosed from arguing that a canopy is not an attachment under SCC § 15.10.140.

The doctrine of collateral estoppel or "issue preclusion" prevents a party from raising a previously adjudicated issue in a later proceeding.[22] Four requirements must be met for collateral estoppel to apply: (1) the party against whom issue preclusion is sought was a party in the previous action; (2) the identical issue was previously decided; (3) a final judgment on the merits was issued; and (4) the judgment depended on resolution of the issue in question.[23]

We review de novo the legal question whether collateral estoppel applies.[24]

The commission's denial of Pruitt's variance application does not meet the requirements for collateral estoppel because the denial was not dependent on the commission's finding that a canopy was an "attachment" under SCC § 15.10.140. Seward City Code § 15.10.325(d) requires satisfaction of seven conditions for a variance. The commission found that Pruitt met only two of the conditions. At least one condition that Pruitt failed to satisfy was unrelated to whether Pruitt's canopy was an attachment under SCC § 15.10.140. The commission is required to find that a requested variance is "the minimum variance necessary to permit the reasonable use of the land or struc-

15. *Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119 (Alaska 1988).

16. *Id.* at 120.

17. *Id.* at 121.

18. *Id.*

19. *Id.* at 122.

20. *Id.* at 121.

21. *Id.*

22. *Varilek v. City of Houston*, 104 P.3d 849, 852–53 (Alaska 2004).

23. *Id.* at 853.

24. *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 99 P.3d 553, 558 (Alaska 2004).

ture." [25] Because Pruitt's property was also being used for boat storage, the commission found there was reasonable use of his property that did not require a variance. The commission could have denied Pruitt's variance application solely because this condition was not met.[26] We therefore cannot say that the commission's denial of Pruitt's variance application depended on its finding that a canopy is an attachment to a building under SCC § 15.10.140, and Pruitt is therefore not collaterally estopped from arguing that a canopy is not an attachment to a building.

## C. It Is Necessary To Give Pruitt Opportunity To Obtain the Commission's Interpretation of SCC § 15.10.140.

 We ordinarily give "great weight" to a zoning board's interpretation of its own zoning code and accept its interpretation when the board supplies a reasonable basis for it.[27] This deference is based on a zoning board's expertise in administering zoning ordinances.[28] When presented with a question of law that does not invoke agency expertise, however, a reviewing court will substitute its judgment for that of a zoning board.[29]

 Pruitt argues that the city's interpretation of SCC § 15.10.140 in the enforcement proceeding is not supported by the text of the ordinance. Seward City Code § 15.10.140 states in part:

Setback. The required minimum distance from right-of-way or lot line that establishes the area within which only fencing, landscaping, driveways, parking and similar uses are permitted. Any structure including, but not limited to decks, stairways, porches or other attachments to a building are specifically prohibited in the

setback. Building eaves are permitted to extend into the setback a maximum of two feet.

. . . .

Structure. Anything constructed or erected on the ground or attached to something having location on the ground, including, but not limited to, buildings, towers, and sheds. Fences, restraining walls less than three feet in height, signs, and similar improvements of a minor character are excluded.

Pruitt argues that a canopy is neither a "structure" nor an "attachment." The city contends that we should defer to the interpretation the planning and zoning commission gave SCC § 15.10.140 in denying Pruitt a variance.

When it denied Pruitt's variance request, the commission reasoned that "canopies or marques which extend out from a building are attachments to a building and clearly prohibited in the setback." But Pruitt did not have the opportunity to argue to the commission that a canopy is not an attachment to a building before the commission entered this ruling. It would have been inconsistent for him, in context of seeking a variance, to argue that his canopy did not in fact violate the zoning code.[30] Also, the key issue in the enforcement case is whether Pruitt's canopy violated the zoning code; the commission did not have to decide this issue in order to deny Pruitt's variance application.[31] Because the commission did not have to resolve Pruitt's present claim that the city's interpretation of the zoning code was erroneous, and because the commission's ruling was not necessary to decide the variance application, the commission's ruling on the

**25.** SCC § 15.10.325(d)(6).

**26.** See SCC § 15.10.325(d).

**27.** South Anchorage Concerned Coalition, Inc. v. Coffey, 862 P.2d 168, 173 n. 12 (Alaska 1993).

**28.** Griswold v. City of Homer, 55 P.3d 64, 68 (Alaska 2002).

**29.** Id.

**30.** See Kaufman v. City of Glen Cove, 180 Misc. 349, 45 N.Y.S.2d 53, 62 (N.Y.Sup.1943) (noting

that "implicit in every variance proceeding is the justified assumption that the ordinance prohibits the proposed use").

**31.** Id. at 61 (holding that decision of zoning board in rejecting variance application does not bar subsequent suit seeking declaratory judgment that provision of ordinance does not prohibit desired use because issues in variance cases are fundamentally different than issues challenging interpretation of zoning code).

variance application is not entitled to deference in the enforcement proceeding.[32]

■ The superior court used its independent judgment to determine that "[t]here is no question that the canopy is an attachment to a structure." The court held that Pruitt's canopy violated the "plain language" of SCC § 15.10.140. But whether the canopy violated the setback ordinance is not clear. Section .140 is not so clear that we can say, as a matter of law, that a canopy is an "attachment to a building." Moreover, according to Pruitt, the canopy only intruded into the twenty-foot setback by about twenty-four inches. The ordinance allows building eaves to protrude into a setback up to two feet.[33] It appears possible that the canopy is sufficiently similar in form and function to building eaves that the canopy should be considered to be within the eaves exception.[34] According to the ordinance, the purpose of setbacks is "to ensure sufficient open area for snow accumulation, sunlight, views, privacy, fire separation and visual relief between structures."[35] Pruitt argues that none of these purposes is compromised by his canopy, protruding as it does only two feet into a twenty-foot setback. He notes that "[o]n any building and certainly ones of one-story, an eave has the same impact on the underlying land as the canopy at issue here." Pruitt also argues that his canopy is a "minor improvement," more like a sign than the ground-based "decks, stairways or porches" mentioned in section .140. In summary, he argues that, in view of the purposes of the setback requirement and the nature of both permitted and prohibited

improvements therein, it would be irrational to prohibit canopies that extend two feet into the setback.[36] Because it is unclear whether the canopy violated the setback ordinance, we are unable to affirm the superior court's conclusion that it did. Given the city's reliance on the exhaustion doctrine, and its failure to tell Pruitt it had made a final, appealable decision interpreting section .140, the court, rather than substitute its judgment for that of the commission, should have given Pruitt an opportunity to obtain the commission's interpretation.[37] Whether the ordinances permit the canopy should be decided in the first instance by the commission. In any subsequent judicial review of the commission's decision on this issue, a deferential standard of review should be employed and the decision will be subject to reversal only if it is unreasonable.[38]

It does not appear that the commission has had an opportunity to interpret SCC § 15.10.140 as applied to Pruitt in light of the parties' present arguments. The superior court on remand should therefore enter an order holding the enforcement action in abeyance until Pruitt has an opportunity to ask the commission to interpret SCC § 15.10.140. The superior court should instruct Pruitt that he has ten days from entry of that order in which to file with the commission an appeal under SCC § 15.10.410 from the city's interpretation of section .140. If he fails to comply with the city's appellate procedure, the abeyance order should be vacated, and the city may argue the exhaustion issue. Otherwise, the enforcement action should be held in abeyance until Pruitt ex-

---

**32.** *Id.* at 62 (stating that in variance proceeding "any decision as to whether the ordinance, by its terms, does or does not prohibit the proposed use, is unnecessary and is a decision upon an immaterial issue. It is well established that any decision upon an immaterial issue is not binding in future litigation.").

**33.** SCC § 15.10.140.

**34.** We note that one definition of "eave" is "a projecting edge." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 717 (1966).

**35.** SCC § 15.10.220(c)(1).

**36.** We express no opinion as to whether it would be irrational for the commission to decide that

canopies are not the same as building eaves for purposes of the setback requirement and that it is desirable to prevent canopies from intruding into setbacks. There is no reason for us to decide or express an opinion about that issue before it becomes ripe.

**37.** *See* 2 PIERCE, *supra* note 10, at § 15.4 (stating that courts should refuse to decide merits of case and send back for exhaustion of administrative remedies when merits issue is unclear and subject to controversy).

**38.** *See supra* notes 29 & 30 and accompanying text.

hausts his administrative remedies or he abandons the administrative appeals. This remedy will give Pruitt an opportunity to obtain the ruling from the commission that he could have sought with a timely appeal had he been told that the city had reached a final, appealable decision. If there is an administrative appeal to the superior court from a final agency determination, the superior court assigned to that appeal can consider whether to consolidate the two cases.

### D. The City's Four Causes of Action Against Pruitt all Relate to the City's Interpretation of the Zoning Code.

The city's enforcement action pleaded four separate causes of action against Pruitt: (1) he violated the building code by using and occupying his building without a certificate of occupancy; (2) he violated the building code by not conforming to the permit that required the building be constructed without the canopy or in a manner so that the canopy did not extend into the setback; (3) his canopy extended into the twenty-foot setback required in the city's zoning code; and (4) he violated the building code by constructing the loading dock without a permit. The superior court found Pruitt liable on all four counts.

All four causes of action depend on the city's interpretation of the zoning code. Most obviously, the claim that Pruitt's canopy violated the zoning code stems directly from the city's interpretation that a canopy is

an attachment to a building within the meaning of SCC § 15.10.140. Calvert's affidavit stated that the building permit did not authorize the canopy because city officials noted that it would violate the zoning code. The canopy's intrusion into the setback was also Calvert's reason for denying a certificate of occupancy for the building and a building permit for the loading dock. All four causes of action therefore originate in the city's conclusion that the canopy violated the zoning ordinance. Because Pruitt must be given the opportunity to appeal the city's interpretation of "structure" to the commission, the superior court's grant of summary judgment must be vacated as to all four counts.[39]

### IV. CONCLUSION

For the reasons discussed above, the superior court's judgment is VACATED. We REMAND with instructions that the city's enforcement action be held in abeyance until Pruitt has the opportunity to appeal the city's interpretation of SCC § 15.10.140. We therefore also VACATE the city's prevailing party award of attorney's fees.

CARPENETI, J., dissenting.

CARPENETI, J., dissenting.

James Pruitt wanted to build a commercial building that the City of Seward believed violated its zoning code. Through its employees, the city told Pruitt no less than seven times in writing[1] and additional times orally[2] that a proposed canopy on the build-

---

**39.** Pruitt also argues that the city's interpretation of SCC § 15.10.140 violated his right to equal protection and substantive due process under the Alaska Constitution. Because we vacate the superior court's order and remand for further consideration, we need not address these arguments.

We have been informed that Pruitt has brought the canopy into compliance with the city's reading of the code. The parties have not contended that this circumstance would moot this appeal, and the city's appellate brief states that Pruitt "apparently wants to rebuild the canopy in violation of City ordinances."

**1.** *See* (1) Letter, Linda–Rae Olsen, Planning Clerk, to James Pruitt, August 18, 2000, advising Pruitt that "canopy will extend into the setback;" (2) Fax, Linda–Rae Olsen, Planning Clerk, to James Pruitt, August 23, 2000, informing Pruitt that "the canopy situation may not fall under [city zoning code]"; (3) Letter, Rachael James,

City Planner, to James Pruitt, March 6, 2001, stating "[b]ased on the building site plan, the canopy is in violation of City Code § 15.10.140;" (4) Inspection Report, Dave Calvert, City Inspector, to Jim Pruitt, May 21, 2001, commenting "Canopy is still in the setback;" (5) Inspection Report, Dave Calvert, City Inspector, to James Pruitt, June 4, 2001, noting "Canopy still in setback;" (6) Letter, Dave Calvert, Manager, Engineering & Utilities, to James Pruitt, Oct. 24, 2001, citing "removal or modification of the Canopy" as primary item that needed to be corrected to qualify for a Certificate of Occupancy; (7) Letter, Dave Calvert, Building Official, to James Pruitt, May 6, 2003, explaining that the denial of a permit for the loading dock was due to having the "Canopy in the set back."

**2.** Affidavit of Dave Calvert, Building Official, stating that on June 4, 2001 Pruitt "was notified ... verbally as well as in writing that the canopy

ing extended illegally into the area reserved for setbacks under the city zoning laws. Pruitt nonetheless went ahead and built the building with the canopy.[3]

After the building was built, the city refused to issue the certificate of occupancy needed under the law to occupy the building.[4] Pruitt nonetheless went ahead and occupied the building.[5]

Pruitt then decided that the building needed a loading dock. He was told by the city that the necessary building permit would not be issued until Pruitt corrected the canopy problem and obtained a certificate of occupancy.[6] Pruitt nonetheless went ahead and constructed the loading dock without correcting the canopy,[7] without obtaining a certificate of occupancy,[8] and without even applying for (much less obtaining) the required permits for construction of the loading dock.[9]

Over three years after Pruitt initially applied for a building permit, and after two additional warning letters,[10] the city brought an enforcement action against Pruitt.[11] Superior Court Judge Morgan Christen ruled in the city's favor, holding that "[t]o the extent

Mr. Pruitt raises challenges regarding violation of the building code, those challenges are not properly raised in superior court because Mr. Pruitt failed to exhaust his administrative remedies." But this court, holding that the city "effectively denied Pruitt an opportunity to appeal its zoning decision" and that the superior court should have given Pruitt the opportunity to submit the issue of the code's meaning to the planning and zoning commission, today vacates the superior court's decision and remands the case to allow Pruitt to appeal.

Because the city specifically and in writing notified Pruitt of his right to appeal,[12] because Pruitt had constructive notice of his right to appeal,[13] and because Pruitt has done nothing during the course of this case to make any claim that it is inequitable to enforce the city's laws, I respectfully dissent.

The linchpin of the court's opinion is its holding that the city "effectively denied Pruitt an opportunity to appeal its zoning decision." This conclusion rests on the court's careful distinction between whether

was in the setback" and that building officials "had numerous communications with Mr. Pruitt regarding the canopy."

3. Affidavit of Dave Calvert, Building Official, stating, "I conducted two [post-construction] inspections ... and on both of the inspection forms noted that the canopy was in the setback."

4. Affidavit of James T. Pruitt, noting, "The City has refused to issue a certificate of occupancy ... and to even consider an application for a building permit for further improvements at this location because the canopy is an alleged violation."

5. Letter, Dave Calvert, Building Official, to James Pruitt, May 1, 2003, noting Pruitt "occupied the building and [has] been operating a business (Ace Hardware) since November, 2001 in violation of the code, and [has] not responded to our requests for a correction of the violation."

6. Affidavit of Dave Calvert, Building Official, stating, "I informed Mr. Pruitt that I would be unable to issue [a building] permit until he had corrected the canopy setback problem and obtained a C.O. for the building."

7. Letter, Dave Calvert, Building Official, to James Pruitt, May 6, 2003, noting that Pruitt had constructed a loading dock and citing the canopy

in the setback as the reason for previously denying a permit for construction of the loading dock.

8. *Id.*, citing Pruitt's lack of an occupancy permit as the reason for denying a permit to construct the loading dock.

9. Affidavit of Dave Calvert, Building Official, stating Pruitt built the loading dock "without a permit and without notifying me."

10. Letter, Dave Calvert, Building Official, to James Pruitt, May 6, 2003, warning Pruitt that he was in violation of the building code; Letter, Dave Calvert, Building Official, to James Pruitt, July 28, 2003, noting that almost ninety days had passed since the initial notice of violation.

11. City of Seward's Complaint, Case No. 3AN–03–13457 CI, Nov. 20, 2003.

12. Letter, Dave Calvert, Building Official, to James Pruitt, Oct. 24, 2001, stating, "As always, you can appeal this decision to the City Council if you so desire."

13. Section 105 of the 1997 Uniform Building Code establishes the Board of Appeals to "hear and decide appeals of orders, decisions or determinations made by building officials relative to the application and interpretation of this code...."

Pruitt should have appealed the city's *building* code rulings or whether he should have appealed the city's *zoning* code rulings, and its conclusion that the city's zoning code determination underlies all of its building code determinations. Focusing only on the city's zoning code decisions (and thereby ignoring every other communication from the city that unmistakably told Pruitt that his canopy was illegal), the court concludes that Pruitt had "no way to know" that he had received a final decision from the city on the building code.

It is difficult to give credit to this conclusion. As the factual history above makes clear, the city had unequivocally notified Pruitt on multiple occasions that his proposal violated the applicable codes.[14] His response—after an unsuccessful attempt to obtain a variance, from which he took no appeal—was to ignore the city and build his building and to occupy it in violation of the codes.[15] It is illogical to assume that Pruitt might have entertained any doubt at all that the city had given its final decision. Moreover, by his action alone he mooted for all practical purposes any claim that he should be allowed to pursue an appeal.

### Why the city's notice of Pruitt's appeal rights was sufficient

On October 24, 2001, Dave Calvert, the manager of the Engineering & Utilities department of the City of Seward, sent a letter to Pruitt to "summarize past actions and provide [Pruitt] with the requirements for occupancy and use of [Pruitt's] building." The letter carefully recounted the history of the city's attempt to obtain compliance with its codes, set out a relevant portion of the building code, noted Pruitt's unsuccessful "appeal" to the Planning and Zoning Com-

mission (the commission had denied Pruitt's request for a variance), and notified Pruitt not to occupy the building until the noted items were corrected and a certificate of occupancy issued. It ended with this notice: "As always, you can appeal this decision to the City Council if you desire."

### Why Pruitt had constructive notice of his right to appeal

As noted above, this long-running dispute between the city and Pruitt involved multiple communications between the parties. The city frequently brought to Pruitt's attention its concern that his building would violate the *zoning* code [16] and that its construction violated the *building* code.[17] Pruitt was informed of his right to seek a variance (and did so), after the city sent him the relevant codes. He had constructive notice of the availability of the right to appeal set out in both the building and zoning codes.[18]

### Why it is entirely equitable to enforce the city's zoning and building codes in this case

The court implicitly faults the city for expressing its determination "informally," and notes that in such cases "courts will determine the 'finality' of the informal expression based on what is most equitable in that case." Even accepting the court's characterization,[19] there is no inequity in the superior court's resolution of this case. Pruitt ignored multiple notifications that, in the view of the responsible officials, his proposed building would violate the law. He went ahead and built it. He was told that he should not occupy it until a correction was made. He went ahead and occupied it. When he determined that he needed to add a loading dock,

**14.** *See supra* nn. 1–2.

**15.** *See supra* n. 3.

**16.** *See, e.g.*, Letter, Linda–Rae Olsen, City Clerk, to Pruitt on August 18, 2000, informing him that the canopy would violate the zoning code and setting out the relevant section and her faxed letter to Pruitt on August 23, 2000 sending information on obtaining a variance.

**17.** *See, e.g.*, Letter, Dave Calvert, Building Official to Pruitt on May 6, 2003 explaining that a

permit for the loading dock was denied because the building was in violation of the building code.

**18.** Seward City Code 15.10.410 (appeals under the zoning code); Section 105, 1997 Uniform Building Code (city's building code in effect at the time pertinent to this case) (appeals under the building code).

**19.** It is difficult to do so. There is nothing particularly "informal" about multiple written notifications from a city to a citizen that the citizen has violated the law.

he was told that he could not obtain the necessary permit without correcting the original violation. Rather than comply, he constructed the loading dock without making the corrections, without obtaining the certificate of occupancy, and even without obtaining a building permit for the new construction. It is hard for me to accept the court's unstated conclusion that Pruitt has any claim to this court's (or Judge Christen's) power to do equity where the circumstances demand it.

For these reasons, I respectfully dissent from the court's decision to vacate the superior court's judgment.